CARRIER CORPORATION *v.* CENTRAL STATION
AIR CONDITIONING CO.

1. JUDGMENT—PAROL EVIDENCE—EXCLUSIVE FRANCHISE AGREEMENT
—INFORMAL COLLOQUY.

Judgment on trial court's own motion dismissing defendant's cross declaration for damages for breach by plaintiff of what defendant claimed was an exclusive franchise agreement, based on application of parol evidence rule during an informal colloquy between court and counsel before defendant had made a formal opening statement, before any motion for such purpose by plaintiff, and before any proofs were offered, *held,* improvident and reversible error, especially where defendant's claims did not all depend upon first establishing an exclusive franchise agreement and the written agreement could be construed, possibly, as a grant of an exclusive right without resort to inadmissible parol evidence.

2. CONTRACTS—DISTRIBUTOR'S AGREEMENT FOR SALE OF AIR-CONDITIONING EQUIPMENT—CONSTRUCTION—EXCLUSIVENESS.

The reservation, in distributor's franchise agreement, of the manufacturer of air-conditioning equipment of the right to make sales to governmental units, utilities, carriers, to manufacturers who install the equipment in their own product, and to special accounts and industries designated therein but otherwise giving the distributor the right to a commission on sales in its territory even when other distributors effected the sale, permits a fair inference that the distributor was being granted the exclusive right to make all other sales in the designated territory.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted June 7, 1962. (Docket No. 19, Calendar No. 49,332.) Decided September 10, 1962.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 23 Am Jur, Franchises §§ 17, 37.

Assumpsit by Carrier Corporation, a Delaware corporation, against Central Station Air Conditioning Co., a Michigan corporation, for materials sold and delivered, with cross declaration by defendant claiming damages arising from breach of dealer's agreement. Judgment for plaintiff. Defendant appeals from dismissal of cross declaration. Reversed and remanded.

*Miller, Canfield, Paddock & Stone* (*George E. Bushnell, Jr., Richard B. Gushee* and *George E. Parker, III,* of counsel, and *James H. Greene,* of Syracuse, New York, of counsel), for plaintiff.

*Seymour F. Posner* and *Norman L. Zemke,* for defendant.

Souris, J. Plaintiff, a manufacturer of air conditioning and heating equipment, sued defendant in assumpsit to recover the cost of equipment purchased from it by defendant. A judgment was entered in plaintiff's favor from which no appeal has been taken. Defendant does, however, appeal from a judgment of no cause entered on the trial court's own motion on defendant's cross declaration for damages for breach by plaintiff of what defendant calls an exclusive franchise agreement.

Before impaneling the jury to hear proofs on defendant's cross declaration,* the trial court asked defendant's counsel for an explanation of the theory of his cross declaration so that the court could advise the jury of the nature of the case when it was impaneled. In the resulting colloquy, defendant's counsel claimed that the written agreement between the parties, a copy of which had been attached to the

---

.. * Defendant conceded much of plaintiff's original claim and proofs were taken as to the balance thereof, trial by jury having been waived as to plaintiff's claim only.

cross declaration, was ambiguous and incomplete and that he intended to offer evidence of prior and contemporaneous oral agreements to prove that the franchise was an exclusive one. The trial judge took the position that parol evidence could not be admitted for the purpose suggested by defendant and, on the assumption that defendant's whole claim depended upon its first establishing that it held an exclusive franchise from plaintiff, entered judgment of no cause against defendant.

We cannot condone such precipitous summary disposition of lawsuits. This case was disposed of by final judgment on the basis of the parol evidence rule applied during an informal colloquy between court and counsel before any proofs were offered,—indeed before appellant's opening statement was made formally and even before a demanded jury was impaneled. It was not based upon a timely motion striking at the heart of the cross declaration, but was entered on the court's own initiative.

It seems apparent to us, from our review of the proceedings below, that plaintiff's counsel did not move for dismissal or summary judgment before trial for at least 2 reasons: (1) the cross declaration discloses on its face that defendant's claims did not all depend upon its success in first establishing an exclusive franchise agreement, and (2) the written agreement itself could be construed, possibly, as a grant of exclusive right without resort to inadmissible parol evidence. For these same reasons we have concluded the judgment was improvident and must be set aside.

The cross declaration seeks damages for several alleged breaches of the agreement between the parties not dependent in any way upon the nature of the franchise granted by the written agreement. At least as to that portion of defendant's claims, therefore, it should have been afforded an opportunity to

present its proofs even if it could not prove it had an exclusive franchise.

But the trial court was wrong also in its assumption that an exclusive franchise could be proved only by use of parol evidence. It is quite unlikely that that error would have been committed had the trial been allowed to proceed with evidentiary questions raised and decided during its course in the normal fashion. It appears from the transcript of proceedings below that the trial judge assumed that the written agreement was silent on the subject of the nature of the franchise,—that is, whether it was exclusive or nonexclusive,—in which event he would have to construe it as granting a nonexclusive right, the parol evidence rule barring evidence of a contrary prior or contemporaneous agreement. Inexplicably, counsel did not advise him that there were terms in the agreement from which an exclusive franchise could be inferred without necessity for reliance upon parol evidence.

Paragraph 6 of the agreement, entitled "Reserved Selling Privilege", reads as follows:

"6. All rights without limitation are and shall be reserved to Carrier to sell within distributor's territory either direct or through others any products without any obligation to pay distributor any commission or other charges on the following sales:

"(a) To the United States or any State government or any municipal government, or any department or bureau thereof, any public utility, any interstate or intercity buyers, or to any buyers for installation on shipboard and for passenger vehicles and for express or freight carrying vehicles.

"(b) To manufacturers who install such equipment in or with their product.

"(c) To persons, firms or corporations upon the terms and conditions now or hereafter set forth in what is designated by Carrier as 'special accounts and industries.' ".

By that provision plaintiff. Carrier reserved the right to make sales within defendant's designated territory, directly or through others, to any of the customers described in subparagraphs (a), (b), or (c). Its reservation of the right to make *only* such sales, directly or through others, certainly permits a fair inference that defendant was being granted the exclusive right to make all other sales within the designated territory.

Paragraph 11 of the "appendix", attached to the basic agreement, provides:

"11. Dealer shall limit the sale of Carrier products to the territory set forth in (5) of this appendix. In exceptional cases where a Carrier dealer sells a Carrier product for installation outside his franchised territory, then the dealer making the sale will, before accepting the order, secure from the Carrier dealer in whose territory the installation is to be made, an approval and agreement as to making the sale, the installation, providing for service, and the distribution of profit on such sale, and the dealer agrees that in case he makes such a sale without securing said dealer's approval, he will pay to said dealer, upon demand, 70% of the gross profit on such sale. This provision shall not apply in case product sold hereunder is a bona fide installation in selling dealer's territory and later removed or resold by the purchaser for use in another territory.

"For the purpose of this agreement, the gross profit on any sale of Carrier products is the difference between the net product cost to dealer, exclusive of installation expense, and the selling price to the customer.

"Any disputes between dealers relating to such sales shall be submitted in writing to the Carrier district office in charge of dealer's territory and its decision hereon shall be binding and final. All claims for division of profits must be made to Carrier within 6 months from date of initial installation."

That provision also permits an inference that the franchise granted was exclusive. Its meaning can be restated as follows: that defendant was to have the exclusive right to sell in his specified territory and that he could not sell in any other territory; that if others sold in defendant's territory, they would have to have his advance agreement on the distribution of profit on such sale; that failing such prior agreement, 70% of the gross profit on such sale would be paid to the franchise holder in whose territory the sale was made; and that disputes between franchise holders relating to sales within their territories would be resolved by plaintiff.

We conclude that the trial court erred in depriving defendant of its right to proceed to trial on the erroneous ground that it would be barred by the parol evidence rule from establishing its claim that it held an exclusive franchise from plaintiff.

Judgment reversed and remanded for further proceedings. Costs to appellant.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, OTIS M. SMITH, and ADAMS, JJ., concurred.